UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
CRIMINAL NO. 02-30(1)(JRT)
CIVIL NO. 04-4520(JRT)

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Respondent,<br><br>v.<br><br>JESUS JIMENEZ-SERRATO,<br><br>Petitioner. | OPPOSITION OF THE UNITED STATES TO SERRATO'S PETITION UNDER 28 U.S.C. § 2255 |

Petitioner Jesus Jimenez-Serrato, who was convicted after a jury trial in 2002 of methamphetamine trafficking offenses, has filed a petition under 28 U.S.C. § 2255 claiming that his trial attorney, Daniel Mohs, was ineffective in three separate respects. Because these allegations are insubstantial on their face, the petition should be summarily denied. No evidentiary hearing is warranted.

## STATEMENT OF FACTS

Petitioner Jesus Jimenez-Serrato lived in a trailer home in Willmar, Minnesota, with his common-law wife, co-defendant Irma Esquivel-Gonzalez. T. 20. The defendant's brother, Luis Jimenez, was a drug dealer. E.g., T. 106, 186.

Beginning as early as 1997, Serrato had an agreement with his brother to allow UPS packages containing drugs to be received at Serrato's trailer home. T. 98-99, 130-31. In July 1997, one of these packages was intercepted by law enforcement and found to contain approximately 11 pounds of marijuana. T. 50. Officers made a controlled delivery of the package to Serrato's trailer,

where his common-law wife Esquivel signed for it and was then arrested. T. 50-51. She was subsequently convicted. T. 55. Serrato was not charged in 1997 because he did not have actual contact with the package, even though he was in the trailer when it was delivered. T. 52. For the same reason, his brother Luis Jimenez was not charged in 1997, even though he arrived to pick up the package while the search warrant was in progress. T. 56, 105-06.

The conspiracy continued. On January 2, 2002, a plumber working on frozen pipes at Serrato's trailer home discovered two separate one-pound bundles of methamphetamine hidden in the insulation by the water heater, which is accessed through an outside panel. T. 5-10. He took one of the bundles of methamphetamine to the police station and reported his findings. Id. Officers returned with a search warrant and recovered the second pound of methamphetamine from the water heater compartment. T. 22-23. Serrato and Esquivel both were present in the trailer home. T. 21.

During a further search of the trailer home, officers recovered numerous items of drug use paraphernalia throughout the trailer. T. 28-38. In Serrato's bedroom they found $3,400 in unexplained cash hidden in a small cardboard box. T. 33. Also hidden in the box was a safe deposit box key. T. 34. A second key for the same box was found in the dresser. T. 34-35.

Officers obtained a search warrant for the safe deposit box, which had been rented months earlier by Serrato and his common-law wife. T. 83. Inside they found a total of $35,600 in cash, segregated into $5,000 bundles and all in $100 bills. T. 85-86. Although Serrato worked nights at a turkey processing plant, his legitimate income was far too small to generate this much cash. T. 131-33, 186-88.

Serrato and Esquivel were charged in a two-count indictment with conspiracy to distribute methamphetamine and aiding and abetting the possession with intent to distribute methamphetamine. Prior to trial, they both jumped bond and fled to Texas where they were arrested several weeks later. T. 93-95. The government obtained a superseding indictment adding a failure to appear count.

Co-defendant Esquivel eventually agreed to cooperate and pleaded guilty to the failure to appear count as well as to an information charging her with maintaining a drug stash house. T. 93-95. Serrato turned down a cooperation plea offer and proceeded to trial. T. 164; T. Sent. at 9.

Esquivel testified at trial that Serrato's brother, Luis Jimenez, was a drug dealer, and that the two pounds of methamphetamine belonged to Luis. E.g., T. 106, 186. She further testified that Serrato had an agreement with Luis as far back as 1997 to help Luis with his drug business by letting Luis send UPS packages containing drugs to the trailer home. T. 98-99, 130-31.

She also testified that, in 2002, Serrato was still helping Luis in his drug business by hiding Luis' drug money for him in a safe deposit box. T. 104-05, 186. With respect to the two pounds of methamphetamine found in the water heater insulation, Esquivel could not say for sure whether Serrato's agreement with Luis in 2002 included storing drugs for him as it did in 1997, T. 131, or whether Serrato was aware the drugs were present on the day in question. T. 107. However, she did hear Luis tell Serrato after the fact that he (Luis) could not believe Serrato did not know the methamphetamine was hidden in the insulation. T. 185-86. From this and other evidence, the jury reasonably inferred that there was in fact an agreement between Luis and Serrato to store drugs at the trailer, but that Luis simply failed to tell Serrato that the drugs were hidden in the insulation on this particular occasion.

The jury convicted Serrato on both counts. (Serrato pleaded guilty to the failure to appear count just prior to trial.) At sentencing, this Court gave Serrato the benefit of a new guideline amendment by treating him as a minor participant. T. Sent. at 13-14. This lowered Serrato's adjusted offense level from 34 to 30 because the amendment (number 640) caps the base offense level for drug defendants who receive a role reduction at level 30 regardless of the actual amount of drugs involved in the offense. The Court sentenced Serrato to 126 months imprisonment on the drug counts plus a six-month consecutive sentence on the failure to appear

count. Serrato's conviction and sentence were affirmed on direct appeal. United States v. Serrato, 336 F.3d 713 (8th Cir. 2003).

ARGUMENT

Serrato claims that his trial attorney was ineffective in (1) allegedly failing to adequately prepare for trial; (2) counseling Serrato to plead guilty; and (3) not calling Serrato to testify at trial. Each of these claims should be rejected as unsupported by the record.

In order to prevail on a claim of ineffective assistance of counsel, a defendant must show that his "counsel's representation fell below an objective standard of reasonableness" and that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different." Strickland v. Washington, 466 U.S. 668, 694 (1984); Garrett v. United States, 78 F.3d 1296, 1301 (8th Cir.), cert. denied, 117 S.Ct. 374 (1996). Strickland requires a deferential review of counsel's performance. There is a presumption that representation was competent, and that the challenged decisions constituted the permissible strategic and tactical choices of counsel. Strickland, 466 U.S. at 689. "[R]easonable trial strategy cannot rise to the level of ineffective assistance of counsel." English v. United States, 998 F.2d 609, 613 (8th Cir.), cert. denied, 510 U.S. 1001 (1993).

A. Alleged Failure to Investigate

Serrato first claims that his counsel failed to adequately investigate the case. Without naming any witnesses or providing affidavits as to what they would have testified to, Serrato simply claims that there was a witness who "confessed to placing the drugs under [Serrato's] trailer," and other witnesses who could have testified to Serrato's finances.

Serrato's conclusory assertions are insufficient. The Eighth Circuit has long held that a section 2255 petitioner must set forth specific facts in support of his allegations, such as the names of witnesses his counsel should have called. For example, in United States v. Delgado, 162 F.3d 981, 983 (8th Cir. 1998), the Eighth Circuit held that "because Delgado made no showing of what other witnesses were available, how they would have testified, and why such additional evidence would have likely affected the result, he has filed to prove that counsel's assistance was ineffective." Absence such specific proof, a defendant is not even entitled to a hearing on his petition. Id., see also Engelen v. United States, 68 F.3d 238, 240 (8th Cir. 1995).

As to the witness who allegedly "confessed to placing the drugs under [Serrato's] trailer," although Serrato does not name the person it appears he is referring to his brother, Luis Jimenez. See T. 164 (Jimenez told case agent he put the drugs in the trailer, then immediately recanted); see also T. 194-95. But the

record shows that Jimenez was not available as a witness at trial. Although Jiminez came to court, he invoked his Fifth Amendment privilege against self-incrimination and refused to testify. T. 160; see also T. 200. Thus, the inability to obtain Jimenez's testimony was not due to any ineffectiveness on counsel's part. Moreover, there was no dispute in any event that Luis Jimenez had put the drugs in the trailer. That was the whole theory of the government's case; namely, that Luis was the main drug dealer and that Serrato was helping him. Jimenez's proposed testimony that he put the drugs in the trailer therefore would not have changed the outcome.[1]

As for the claim that counsel should have called witnesses to testify about Serrato's finances, Serrato does not name any such witnesses nor does he describe their proposed testimony. This is insufficient. Delgado, 162 F.3d at 983. Moreover, defense counsel did call Serrato's wife, who testified about the family finances in some detail. T. 169-77. Counsel was able to elicit enough facts to permit an argument or inference that the money found in the safe deposit box came from a legitimate source. Counsel was not ineffective in this respect.

---

[1]Serrato apparently tried to blame the drugs on someone other than his brother at one point. See Mohs Affidavit at ¶ 3. Defense counsel attempted to find such a person without success. Id. ¶ 4. The inability to produce a witness willing to take the fall for the drugs was not the result of any ineffective assistance of counsel.

B. Alleged Advice to Plead Guilty

Serrato next claims his counsel was ineffective for advising him to plead guilty despite Serrato's protestations of innocence. Under the circumstances, this was probably sound advice. Even if it wasn't, Serrato can demonstrate no prejudice because he did not follow the advice. Serrato went to trial. Thus, there was no prejudice from this allegedly improperly advice.

C. Alleged Failure to Have Defendant Testify

Finally, Serrato claims his counsel failed to consult with him about testifying, and declined to call Serrato as a witness at trial. The government has two responses. First, the record refutes Serrato's claim that his lawyer did not consult with him about testifying. Mr. Mohs' comments during the trial indicate that he had in fact consulted with Serrato about testifying:

> The other thing, your Honor, is I advised my client not to testify. I think I need more time to talk to him about that. Because he's not sure whether he should take the stand. I possibly will convince him not to testify.

T. 153. Further, Mr. Mohs states in his affidavit that he did consult at length with Serrato about the decision to testify. Mohs Affidavit at ¶ 8.

Second, while Serrato implies he wanted to testify, he does not say what he would have testified to. He has therefore failed to meet his burden of proving that the outcome would have been different if he had testified. Delgado, 162 F.3d at 983.

CONCLUSION

For the foregoing reasons, Serrato's petition should be summarily denied. No evidentiary hearing is warranted.

Sincerely yours,

Dated: December 7, 2004

THOMAS B. HEFFELFINGER
United States Attorney

s/Jeffrey S. Paulsen
BY: JEFFREY S. PAULSEN
Assistant U.S. Attorney
Attorney ID Number 144332