UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Criminal No. 02-30 (1) JRT/FLN

---

UNITED STATES OF AMERICA,

PLAINTIFF,

vs.

**AFFIDAVIT OF ATTORNEY DANIEL BRADFORD MOHS**

JESUS JIMENEZ-SERRATO,

DEFENDANT.

---

COMES NOW the affiant, Daniel Bradford Mohs, being first duly sworn upon oath, and states that:

1. My name is Daniel Bradford Mohs. My law office is located at 201 Ridgewood Avenue, Minneapolis, Minnesota 55403-3508. I am the attorney who represented the defendant, Jesus Jimenez-Serrato, at trial in this matter.
2. As I recall, Mr. Serrato was indicted by a federal grand jury, along with his wife, for possessing approximately two pounds of methamphetamine that was found hidden in their trailer home in Willmar, Minnesota during the execution of a search warrant. It is true that each time I met with Mr. Serrato he professed his innocence.
3. Several times when I met with Mr. Serrato I explained the legal theories of "constructive" and "joint" possession, and asked him, "If he, or his wife, or both of them, did not possess the methamphetamine, who did?" Mr. Serrato speculated that either 1) another man who was a friend of his brother, who stayed at his trailer sometimes, may have hidden the drugs in his trailer, or 2) a "neighbor" who is involved with drugs may have been stashing his drugs in Serrato's trailer, because the area where the drugs were found could be accessed through a wooden panel on the outside of the trailer.

4. Although it is true the drugs could be accessed from an outside panel on the Serrato trailer, it is also true, as I recall from the evidence, the area where the drugs were found could be accessed from inside the trailer as well. In any event, Serrato's brother's friend could not be found for questioning, and it appeared from different sources that the friend had returned to Texas or Mexico in one of Serrato's brother's vehicles. I traveled to Willmar to personally inspect the trailer, take photographs of the trailer and trailer park, and gather information about any neighbors who might be involved in drug dealing. Although I found evidence of minor drug offenses being reported in the trailer park, there was nothing of any significance to indicate "a neighbor" of Mr. Serrato's was involved in large-scale methamphetamine dealing.

5. Another fact that was problematic for Mr. Serrato and his wife was a safe deposit box in their names at a Willmar bank that contained approximately $30,000.00 in cash. A separate search warrant was obtained for the safe deposit box. Mr. Serrato again professed his innocence regarding this large amount of cash, claiming it was money he had saved from working that he kept at the bank in the form of cash to avoid having to pay additional child support to his ex-wife (or girlfriend). However, as I recall, there were times when the Serratos were unable to make their utility payments despite having this large amount of cash savings. Mr. Serrato's claims about the money were presented to the jury through employment records, tax returns and the testimony of his wife.

6. From all the evidence in the case, and the fact that Mr. Serrato's wife had a prior drug conviction, it was my opinion that both would be convicted at trial, and Mr. Serrato's wife would receive an enhanced sentence. Despite Mr. Serrato's claims of innocence, it appeared to me that Mr. Serrato and his wife were allowing some third party to use their trailer as a "stash house" for methamphetamine, and that they were temporarily holding large amounts of cash for this person who would let them keep some nominal amount of the cash for their efforts. At one point, Mr. Serrato's brother came forward and stated the drugs belonged to him and wanted to know if his brother would go free if he stated Mr. Serrato had nothing to do with the drugs. In light of this statement, I attempted to call Mr. Serrato's brother to the witness stand, but the brother's attorney came into court and stated

on the record that the brother would "take the Fifth" if I asked him any questions about the drugs. Consequently, I did not call the brother as a witness.

7. Based upon my view of all the evidence, prior to trial I negotiated a plea agreement with the prosecuting attorney that would have permitted Mr. Serrato to plead guilty to one count of "maintaining a stash house" with a contemplated sentence of approximately four years. Mr. Serrato agreed to accept the offer rather than face conviction and a sentence of eleven years. Unfortunately, during the proffer to the government that is required in order to take advantage of a plea agreement, Mr. Serrato refused to admit the cash in the safe deposit box was drug money rather than legitimate savings, so the plea negotiations broke down and the case proceeded to trial.

8. One of the issues at trial was whether Mr. Serrato would testify in his own defense. Although I have had clients of mine testify in numerous other cases, it was my view that Mr. Serrato would not have made a credible witness. All he could offer with respect to the methamphetamine found in his trailer was that he didn't know it was there. The main problem with his potential testimony, in my view, was with respect to the cash found in the safe deposit box. Mr. Serrato's claim that he saved the money from legitimate earnings over a number of years, but was unable to consistently pay for his basic living expenses like utilities, made no sense. I felt confident that the prosecutor would have annihilated Mr. Serrato on cross-examination had Mr. Serrato testified. In addition, I had legitimate concerns that Mr. Serrato could very well have received a two-level increase for obstruction of justice had he testified. Consequently, I discussed this issue at length with Mr. Serrato prior to trial, even asking the court for additional time during the trial to discuss the issue further with Mr. Serrato. The decision to testify or not was Mr. Serrato's, although I did urge him as his attorney not to do so, and he chose at the time to follow my advice.

9. The one unfortunate and regrettable aspect of this case, in my opinion, is that Mr. Serrato, for some reason unknown to me, could not let go of the money. In the end, he not only forfeited the money when he was convicted, but forfeited his opportunity to plead guilty to a lesser charge, and ultimately gave up seven years of his life for $30,000.00 of his, or someone else's, money. If anything, I wish I

would have been more active in my efforts to get Mr. Serrato to plead guilty. But, as much as I will sometimes encourage my clients to accept a deal if it is fair to them, and the evidence against them is overwhelming, I always leave the decision up to the client, as I did in this case.

**FURTHER AFFIANT SAYETH NOT.**

Daniel B. Mohs

**SUBSCRIBED AND SWORN** to

before me this 1st day of December, 2004

**Notary Public**

MARY KASEL OLSON
Notary Public - Minnesota
My Commission Expires Jan. 31, 20